STATE, *ex rel.* THE ATTORNEY GENERAL *v.* ARKANSAS COTTON OIL COMPANY.

Opinion delivered December 21, 1914.

1. CORPORATIONS—SURRENDER OF CHARTER—ABATEMENT OF ACTIONS.—An action against a corporation to recover penalties for alleged viola-

tions of the anti-trust statutes, will be abated, when the corporation, during the pendency of the action, surrenders its charter, under Kirby's Digest, § § 957 and 958.

2. ACTIONS—PENAL AND REMEDIAL.—Where an action is founded entirely upon a statute, and the only object is to recover a penalty or forfeiture, it is a penal action; but where the damages are given wholly to the injured party, as compensation for the wrong and injury, the statute having for its object more the indemnification of the plaintiff than the punishment of the defendant, the action is remedial.

3. CORPORATIONS—DISSOLUTION—PENAL ACTION—ABATEMENT.—A strictly penal action does not survive against a corporation, which, during the pendency of the action, surrenders its charter, since the statutes make no provision for the payment of penalties assessed against a dissolved corporation.

4. CORPORATIONS—RIGHT TO DISSOLVE VOLUNTARILY—ANTI-TRUST ACT.— The right of a corporation to dissolve voluntarily under the statutes of the State, is not abridged or limited by Act 1, page 1, Acts 1905.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

*Wm. L. Moose,* Attorney General; *Jno. P. Streepey,* Assistant, and *Edw. B. Downie,* for appellant.

1. There was at best but a mere technical surrender of the charter and demise of the Arkansas Cotton Oil Company. The Union Seed and Fertilizer Company has made no change in the operation of the mills, conducts the business at the same stand, with the same force and in the same manner as was heretofore done by the Arkansas Cotton Oil Company, and is, in fact, but a mere continuation of the last named company. The rule applied by the Supreme Court of the State of Washington should be applied here. 111 Pac. (Wash.) 1073; 127 Pac. (Wash.) 307, 309; 107 Ark. 118.

2. Sections 953, 957 and 958 of Kirby's Digest, constitute saving clauses to prevent the abatement of this action. 55 L. R. A. 779, 780 (N. Y.)

3. An action of this nature can not be abated as against the sovereign. To permit such a course would be iniquitous, permitting the corporation to take advan-

tage of its own wrong and leaving the sovereign without remedy.

4.   This rule of the common law was never adopted by the State of Arkansas.   9 Ark. 258-270; Kirby's Dig., § 623.

*Moore, Smith & Moore* and *Cockrill & Armistead,* for appellee.

The dissolution of the Arkansas Cotton Oil Company, a domestic corporation, in the manner provided by statute, abated the action:

1.   Because the dissolution of a corporation abates all pending suits against it, in the absence of a saving statute providing otherwise.   3 Story, 657; 21 Wall. 609; 8 Pet. 281 (8 L. Ed. 945); 144 U. S. 640, 36 L. Ed. 574; Cook on Corporations, 1908 ed, § 642; 10 Cyc. 1316, 1317; 68 Ill. 348; 128 Pac. 1040; 69 S. E. (Ga.) 822; 65 S. E. 1084; 120 Fed. 165; 74 Fed. 425; 87 Hun. 384; 141 N. Y. S. 505; 18 Ark. 554; 11 So. 428; 12 S. E. 275; 126 N. W. 1043.

2.   Because this is an action for a penalty which did not survive the death of the corporation.   18 Enc. Pl. & Pr. 1128; 122 S. W. 1077; 33 L. R. A. (N. S) 576, note; Kirby's Dig., § 6285; 110 U. S. 76; 105 Am. St. 74; 40 Am. Rep. 146; 42 *Id.* 14; 66 Am. Dec. 184; 7 L. R. A. 553; Dec. Digest, "Penalties," § 31; 70 S. W. 347; 161 S. W. 136.

3.   There is no merit in the effort of the State to avoid the abatement of the action on the theory that the Union Seed & Fertilizer Company, the purchaser of its properties, is a mere continuation of the Arkansas Cotton Oil Company.   The State must fail in this contention, not only because the Union Seed & Fertilizer Company is not a party to this suit, but also because the facts do not bring this case within the rules laid down in the cases cited in support of the contention, even if this was a suit for debt or tort; and certainly there is no rule of law which imposes upon a purchasing corporation liabilities for *penalties* incurred by the selling corporation, no matter under what circumstances the sale was made.

4. Section 3 of the Anti-Trust Act of 1905, providing for the forfeiture of the corporation's charter, does not take away or affect the corporation's right to surrender its charter during the pendency of an anti-trust suit.

Kirby's Digest, § § 957, 958, gives to all corporations the absolute right of voluntary dissolution. It was within the province of the Legislature to provide that, pending suits for penalties should not abate upon the dissolution of the corporation, but it did not.

The mere fact that our anti-trust act *authorizes* the court to forfeit the charter of an offending corporation, does not justify the presumption that it will be done, even if the defendant is found guilty. Section 3 of the act is no more mandatory than section 2, providing for a fine; and that the act contemplates only one mode of punishment is shown by section 11, providing for compensation of the Attorney General, *when a charter is forfeited only.* 73 S. W. 645; *Id.* 1132.

McCULLOCH, C. J. This is an action at law instituted by the Attorney General against the Arkansas Cotton Oil Company, a domestic corporation, to recover penalties for alleged violation of the anti-trust statutes. During the pendency of the action in the circuit court of Pulaski County, the defendant conveyed all of its assets to another corporation for a nominal consideration, and by a resolution adopted by a majority of the stockholders, filed in the office of the Secretary of State, surrendered its charter. Thereupon a motion was filed in this case, by one who had been a stockholder of the dissolved corporation and the vice president and secretary thereof, to abate the action on the ground that since the corporation had dissolved, an action against it could no longer be maintained. The court sustained the motion and the Attorney General appealed to this court.

There is a statute concerning the voluntary dissolution of corporations, which reads as follows:

"Sec. 957. Any corporation may surrender its charter by resolution adopted by the majority in value

of the holders of the stock thereof and a certified copy of such resolution filed in the office of the county clerk of the county in which such corporation is organized, shall have effect to extinguish such corporation.

"Sec. 958. When any corporation has surrendered its charter, the chancery court shall have jurisdiction to pay its debts and to distribute its assets among the stockholders according to their several interests." Kirby's Digest, § § 957-958.

(1) Other sections of the statute provide for dissolution by decree of a chancery court, at the instance of stockholders or creditors. The doctrine seems to be settled by many courts of the American states that the effect of a dissolution of a corporation is to abate actions pending against it at the time of its dissolution "in the absence of a statute providing for the continuation of such actions." 10 Cyc. of Law, pp. 1316-1317. The authorities on that subject are collated in the encyclopedia. It is said in most of the cases that the courts, in thus holding to the doctrine, are following the common law on the subject; but it is pointed out that there was no such doctrine at common law for the reason that business corporations were unknown at that time, and there only existed those which were either municipal, ecclesiastical, or eleemosynary. How far we would feel constrained to go in following those decisions in a case involving a suit against a corporation to recover a debt, we need not now stop to consider, for in the light of our statutes on the subject a discussion of the effect of a dissolution during the pendency of such an action would seem to be academic. The statute, it will be observed, gives the unqualified right to dissolve and makes provisions for the payment of debts and the distribution of assets. It means, that by such dissolution, the existence of the corporation is terminated, except for purposes specified therein, either expressly or by necessary implication. 5 Thompson on Corp., § 6478. In the case of *Freeo Valley Rd. Co.* v. *Hodges,* 105 Ark. 314, 151 S. W. 281, we said, in discussing this statute, that even "in the absence of a statute

on the subject, the decided weight of authority is that strictly private corporations may surrender their charters and dissolve themselves except so far as creditors have a right to object.'' We have here no action for the payment of debts, for this is one by the State to recover a penalty, the purpose being not to recover a debt, but to punish for alleged infractions of the law. The statute makes no provision for the continuance or survival of any such action against a dissolved corporation.

It is insisted that the suit can not be abated as against the State, and for ground of that contention it is said that the State would be without a remedy. But we inquire why can not the action be abated, if there is nothing in the statute which authorizes its continuance? The legislative will is supreme and the unqualified right of dissolution is declared in the statute. The statute does, as before stated, contain a provision for the payment of debts and the distribution of assets, but this does not, for obvious reasons, apply to the recovery of a penalty. The distinction between a penalty and a debt is pointed out by the Supreme Court of the United States in the case of *Huntington* v. *Attrill,* 146 U. S. 657. Speaking of penal statutes, the court said ''Strictly and primarily, they denote punishment, whether corporal or pecuniary, imposed and enforced by the State, for a crime or offense against its laws.''

(2)   In 1 R. C. L., § 46, pp. 47-48, it is said: ''As to what is a penal action the rule is that where an action is founded entirely upon a statute, and the only object of it is to recover a penalty or forfeiture, it is clearly a penal action. But where the damages are given wholly to the party injured, as compensation for the wrong and injury, the statute having for its object more the indemnification of the plaintiff than the punishment of the defendant, the action is not penal, properly so called, but remedial. In other words, where a liability is imposed by statute upon a person purely for a violation of its provisions, the statute is penal; but where it

is a statute which is merely declaratory of a common-law right, coupled with a means or way enacted for its enforcement, giving a remedy for an injury against the person by whom it is committed to the person injured, and either limiting the recovery to the amount of loss sustained or to cumulative damages as compensation for the injury, it is a remedial statute.''

(3)   Since there is no provision in the statute for the payment of this kind of a claim against a dissolved corporation, it is plain that there can be neither a continuation of the action nor a revival thereof. Whether there would be an abatement of an action which does in effect survive under the statute, we need not stop to inquire, for the reason that that question is not raised here. We have before us the question of enforcement of a strictly penal statute, which does not survive under this or any other statute, no provision is made for the enforcement of such claim against a dissolved corporation, and it necessarily follows that the action does not survive even where the dissolution takes place after the commencement of the action.

The State, to sustain its contention, relies upon the case of *Shayne* v. *Evening Post Publishing Co.,* 168 N. Y. 70, an opinion of the New York Court of Appeals rendered by Judge Parker. That was an action for libel against a domestic corporation, and, the charter of the corporation having expired by limitation during the pendency of the action, there was a motion to revive or continue the action in the name of the trustees, the motion being founded on a statute of that State which provided that upon the dissolution of any corporation the directors should be the trustees of the creditors, stockholders or members, with full power to settle the affairs of the corporation, collect and pay outstanding debts and distribute surplus proceeds. The court held that the action for libel came within the terms of the statute and that the cause should be revived against the former directors of the defunct corporation as trustees. There is much in the opinion in that case which seems to be at variance with the

current of American authority; but whether it should be followed in a case involving the right to revive an action against a corporation for liability other than a penalty, we need not consider. It has much persuasive force but it is not an authority on the question now before us. Whether that court was right or wrong in deciding that an action for libel fell within the terms of the statute, that question is not pertinent to the issue now before us. We must look for a solution of this question to the statutes of our own State, which provide for the payment of debts and distribution of assets of a dissolved corporation, but not for the payment of penalties.

A decision of one of the Texas courts of civil appeals is precisely in point. *Mason* v. *Adoue,* 30 Texas Civil Appeals Reports 276, 70 S. W. 347. That was an action, the same as this, to collect penalties for alleged violations of the anti-trust laws of that State; and during the pendency of the action the defendant corporation was dissolved by the judgment of another court, and it was held that this operated as an abatement of the action. The Supreme Court of that State denied a petition for a writ of error.

We are of the opinion that that is the correct solution here, and that the circuit court was correct in entering an order abating the action.

(4)   Our attention is called to the third section of the anti-trust statute of 1905, which provides, in addition to the penalty prescribed in section 2, that any corporation organized under the laws of this State found guilty of a violation of the terms of the statute shall forfeit its charter, such forfeiture to be declared by any court of competent jurisdiction. It is argued that this provision of the statute is inconsistent with the right of voluntary dissolution of a corporation during the pendency of the State's suit to enforce penalties. The act of 1905 does not attempt, in express terms, to repeal any other statute except the act of 1899, which relates to the same subject. It is not a general statute covering the laws on the subject of the organization, control and

dissolution of corporations, and, therefore, does not repeal any other statutes by implication except such as are in irreconcilable repugnance to it. It does not deal at all with the question of voluntary dissolution of corporations, and it would be extending the force of the statute beyond its legitimate scope to hold that it took away or limited the right of voluntary dissolution expressly and unqualifiedly conferred by another statute. There are no limitations as to time or circumstances in the statute conferring the right of voluntary dissolution, and that provision in the act of 1905 can not be reasonably construed as a limitation on that right.

It is urged that the effect of this holding is to thwart the efforts of the State to enforce the anti-trust laws, giving corporations the privilege of defeating the State's right of action by voluntary dissolution. But the answer to this is that the remedy lies with the Legislature. It is entirely within the power of the lawmakers to declare that a dissolution shall not abate an action to enforce the anti-trust laws; and that notwithstanding such dissolution, the accrued penalties shall be enforced against the assets of the corporation. Until that remedy is provided by the lawmakers themselves, none can be molded by the courts, in the face of the statutes now in existence, which expressly and unqualifiedly give the right of dissolution without any provision, after such dissolution, for the enforcement of penalties.

Judgment affirmed.

KIRBY, J., dissents.